UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
XIAO HONG LIU and HUI YING HUANG,
on behalf of themselves and others similarly situated,

              Plaintiffs,

    -against-

VMC EAST COAST LLC d/b/a VMC East Coast;
K & F TRAVEL & TOUR INC. d/b/a VMC East Coast;
ANH MANAGEMENT & CONSULTING LLC
d/b/a VMC East Coast; SUPERWORLD EXPRESS
CORP.; MARK TRAN, GLENN LEDET,
ANH T. DUONG and SHIU LEUNG a/k/a Sue Leung,

             Defendants.
-------------------------------------------------------------------X

MEMORANDUM
AND ORDER

16 CV 5184 (AMD)(RML)

LEVY, United States Magistrate Judge:

Defendants/third-party defendants Superworld Express Corp. and Shiu Leung move to disqualify plaintiffs' counsel, John Troy, Esq. and Troy Law, PLLC, from providing further legal representation to plaintiffs in this action. I conducted a hearing on May 31, 2017 (see Transcript of Hearing, filed July 5, 2017 ("Tr.")), after which the parties filed supplemental submissions. For the reasons stated below, the motion is denied.

## BACKGROUND

Plaintiffs Xiao Hong Liu and Hui Ying Huang ("plaintiffs") commenced this action in September 2016, asserting claims for, *inter alia*, unpaid minimum wages and overtime pay against defendants VMC East Coast LLC, K & F Travel & Tour Inc, Management LLC, Glenn Ledet, and Mark Tran under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq., and the New York Labor Law ("NYLL"), N.Y. LAB. LAW §§ 190 et seq., 650 et seq. (See Complaint, dated Sept. 18, 2016 ("Compl."), Dkt. No. 1.) Plaintiffs allege that they were

employed as tour guides to accompany passengers on motor coaches from specific locations in New York City to and from the Mohegan Sun Casino Resort in Uncasville, Connecticut. (Id. ¶¶ 32-53.)

In November 2016, defendants VMC East Coast LLC, Glenn Ledet, and Mark Tran brought a third-party complaint against Superworld Express Corp. ("Superworld") and Shiu Leung, asserting claims for indemnification and contribution, breach of contract, and fraud. (See Third-Party Complaint, dated Nov. 16, 2016, Dkt. No. 16.) Plaintiffs amended their complaint in January 2017 to assert claims against VMC East Coast LLC d/b/a VMC East Coast, K & F Travel & Tour Inc. d/b/a VMC East Coast, ANH Management & Consulting LLC d/b/a VMC East Coast, Superworld, Mark Tran, Glenn Ledet, and Shiu Leung a/k/a Sue Leung. (See First Amended Complaint, dated Jan. 2, 2017, Dkt. No. 21.) VMC East Coast LLC, Mark Tran, and Glenn Ledet filed an amended third-party complaint against Superworld and Shiu Leung in February 2017. (See First Amended Third-Party Complaint, dated Feb. 6, 2017, Dkt. No. 29.) According to the amended third-party complaint, VMC, a travel agency based in California that specializes in providing bus transportation to casinos, had entered into a contract with Superworld, pursuant to which Superworld agreed to provide tour guides for buses operating on the Mohegan Sun route and to supervise and control the tour guides' work schedules, maintain all employment records, and determine their rates and methods of pay. (See id. ¶¶ 12, 14-16.)

Superworld and Shiu Leung filed the instant disqualification motion on April 12, 2017. They contend that plaintiffs' attorney, John Troy, "obtained material and confidential information from Defendant Leung and a third party witness and a former tour guide of VMC East Coast LLC ("VMC"), Ms. Yik Mei "Cindy" Low ("Ms. Low")[,] [i]n two separate in-person meetings between Mr. Troy, Defendant Leung, and Ms. Low on or about September 23,

2

2016 and October 8, 2016," prior to the filing of the third-party complaint. (Defendants/Third Party Defendants' Memorandum of Law in Support of Motion to Disqualify John Troy, Esq. and the Law Firm of Troy Law, PLLC From Representing Plaintiffs in This Action, dated Apr. 12, 2017 ("Defs.' Mem."), Dkt. No. 37-1, at 1.)  I held a hearing on May 31, 2017, at which Shiu Leung testified concerning her recollection of discussions she had with Mr. Troy prior to the filing of the third-party complaint and amended complaint.  (See Tr.)  I initially scheduled a continued hearing for June 2, 2017, but then determined that further testimony was unnecessary.  (See Order, dated June 1, 2017.)

At the hearing, Ms. Leung testified under oath, through an interpreter.  She stated that she is the president of Superworld, which had entered into a Services Agreement with defendants and third-party plaintiffs VMC, Mark Tran, and Glenn Ledet in May 2015.  (See Tr. at 5-7; Ex.1 ("Services Agreement").)  VMC had obtained exclusive rights to provide transportation from specific locations in New York City to the Mohegan Sun Casino Resort, and had contracted with Superworld to provide certain services for those routes, including hiring motor coaches, furnishing personnel, obtaining all necessary licenses and permits, and maintaining insurance.  (See Tr. at 8, Services Agreement, Ex. A.)  According to Ms. Leung, that relationship lasted from June 1, 2015 until August 29, 2016, when VMC unilaterally terminated the contract.  (Tr. at 8-10, 27.)

Ms. Leung testified that, when VMC canceled the contract, she decided to consult with an attorney.  (Id. at 10.)  In hope of finding a lawyer to take her case on contingency, she stated that she searched through Chinese language newspapers and contacted a number of attorneys, including John Troy, whom she arranged to meet on September 23, 2016.  (Id. at 10-11.)  She arrived at Mr. Troy's office on that date, accompanied by Ms. Low, who had worked as

3

a tour guide on the Mohegan Sun route. (Id. at 11.) She explained: "I wanted to know whether he can represent me and start a lawsuit because I have been terminated." (Id. at 12.)

According to Ms. Leung's testimony, Mr. Troy explained that he was already representing two tour guides who were suing VMC, but he stated that the other lawsuit would not present a conflict of interest. (Id. at 13.) The two then proceeded to discuss her company's relationship with VMC, including the procedure for verifying that tour guides collected money from all passengers and transmitted it to VMC's payroll company, K & F. (Id. at 15-18.) She stated that the meeting lasted for approximately "an hour, hour and a half." (Id. at 19.)

Ms. Leung testified that she and Ms. Low had a second meeting with Mr. Troy on October 8, 2016, a Saturday. (Id. at 19-20.) She said that she again described VMC's termination of the Superworld contract, and Mr. Troy confirmed that he could bring a breach of contract action against VMC on her behalf without creating a conflict of interest. (Id. at 20-21 ("[H]e said, definitely, I can bring the lawsuit and no conflict of interest.")) However, when asked if he would take the case on contingency, Mr. Troy responded that Ms. Leung would have to pay "a few thousand, 10,000, or no more than 10,000 [dollars]," whether she won or lost. (Id. at 21.) She decided to think about it and "see if I can find some other attorney who would be free on contingency." (Id.)

In addition to this testimony, Ms. Leung submitted the transcript of a translated audio recording of a March 14, 2017 telephone conversation, purportedly between herself and Mr. Troy. (See Letter of Kevin K. Yam, Esq., dated June 8, 2017, Dkt. No. 66, Ex. 1.) In the conversation, Ms. Leung reminded Mr. Troy of their previous meetings concerning his potential representation of Superworld. Mr. Troy responded that, because "the other party" (presumably

4

VMC) had brought a third-party action against her in "the same lawsuit," she "should hire an attorney independently to handle it." (Id.)

## DISCUSSION

"The authority of federal courts to disqualify attorneys derives from their inherent power to 'preserve the integrity of the adversary process.'" Hempstead Video, Inc. v. Inc. Vill. of Valley Stream, 409 F.3d 127, 132 (2d Cir. 2005) (quoting Bd. of Educ. of the City of N.Y. v. Nyquist, 590 F.2d 1241, 1245 (2d Cir. 1979)). In exercising this power, the court must balance "'a client's right freely to choose his counsel' against 'the need to maintain the highest standards of the profession.'" Id. (quoting Gov't of India v. Cook Indus., Inc., 569 F.2d 737, 739 (2d Cir. 1978)).

In general, "[m]otions to disqualify are 'disfavor[ed].'" Maricultura Del Norte, S. de R.L. de C.V v. Worldbusiness Capital, Inc., No. 14 CV l0143, 2015 WL 1062167, at *7 (S.D.N.Y. Mar. 9, 2015) (quoting Bennet Silvershein Assocs. v. Furman, 776 F. Supp. 800, 802 (S.D.N.Y. 1991)). "'This reluctance probably derives from the fact that disqualification has an immediate adverse effect on the client by separating him from counsel of his choice, and that disqualification motions are often interposed for tactical reasons. And even when made in the best of faith, such motions inevitably cause delay.'" Id. (quoting Nyquist, 590 F.2d at 1246). Thus, a party's burden in seeking to disqualify opposing counsel is high, and a court tasked with resolving such a motion must proceed with care. See Capponi v. Murphy, 772 F. Supp. 2d 457, 471 (S.D.N.Y. 2009) ("'The Court must consider the factual record underlying [the] motion in detail to determine whether the party seeking disqualification has sustained the high standard of proof necessary to disqualify opposing counsel.'" (quoting Papyrus Tech. Corp. v. New York Stock Exck, Inc., 325 F. Supp. 2d 270, 276 (S.D.N.Y. 2004))); see also Fund of Funds, Ltd. v.

5

Arthur Andersen & Co., 567 F.2d 225, 227 (2d Cir. 1977) ("[T]he conclusion in a particular [disqualification] case can be reached only after painstaking analysis of the facts and precise application of precedent." (footnote omitted)); Simply Fit of N. Am., Inc. v. Poyner, 579 F. Supp. 2d 371, 384 (E.D.N.Y. 2008) ("The remedy of disqualification is granted only in limited circumstances and the moving party 'bears a heavy burden of proving facts required for disqualification.'" (quoting Export Dev. Corp. v. Uniforms for Indus., Inc., No. 88 CV 2496, 1991 WL 10929, at *2 (E.D.N.Y. Jan. 25, 1991))).

In meeting the burden of proof on a disqualification motion, "[m]ere speculation will not suffice." Twin Labs., Inc. v. Weider Health & Fitness, No. 87 CV 0949, 1989 WL 49368, at *4 (S.D.N.Y. May 4, 1989) (citing Int'l Union, United Auto. Aerospace & Agric. Implement Workers of Am. (UAW) v. Nat'l Caucus of Labor Comms., 466 F. Supp. 564, 570 (S.D.N.Y. 1979))). Further, the "[m]ere appearance of impropriety will not alone serve as a sufficient basis for granting a disqualification motion. Rather, the motion will be granted only if the facts present a real risk that the trial will be tainted." Revise Clothing, Inc. v. Joe's Jeans Subsidiary, Inc., 687 F. Supp. 2d 381, 388 (S.D.N.Y. 2010) (quoting United States Football League v. Nat'l Football League, 605 F. Supp. 1448, 1452 (S.D.N.Y. 1985)); see also Twin Labs., Inc., 1989 WL 49368, at *4 ("[T]he evidence must at least be sufficient to support a reasonable inference that [a canon of professional responsibility] ha[s] been violated." (citing Consolidated Theatres v. Warner Bros. Circuit Mgmt. Corp., 216 F.2d 920, 924 (2d Cir. 1954))). In the end, after careful analysis, motions to disqualify are committed to the sound discretion of the court. Purgess v. Sharrock, 33 F.3d 134, 144 (2d Cir. 1994).

Concurrent representation of parties on opposing sides of a case is a prima facie conflict of interest. See Hempstead Video, Inc., 409 F.3d at 133. However, there is no

allegation that Mr. Troy ever represented Ms. Leung or Superworld in this or any other litigation. At most, they were prospective clients.

Rule 1.18 of the New York Rules of Professional Conduct, titled "Duties to Prospective Clients," provides a basis for disqualifying an attorney who "is in a position to use confidential information obtained from a potential client." Miness v. Ahuja, 762 F. Supp. 2d 465, 478-79 (E.D.N.Y. 2010). Rule 1.18 provides, in pertinent part:

> (a) A person who discusses with a lawyer the possibility of forming a client-lawyer relationship with respect to a matter is a 'prospective client.'
>
> (b) Even when no client-lawyer relationship ensues, a lawyer who has had discussions with a prospective client shall not use or reveal information learned in the consultation. . . .
>
> (c) A lawyer subject to paragraph (b) shall not represent a client with interests materially adverse to those of a prospective client in the same or substantially related matter if the lawyer received information from the prospective client that could be significantly harmful to that person in the matter, except as provided in paragraph (d)[1]. . . .

N.Y.R.P.C. 1.18.

Thus, Rule 1.18 only prohibits adverse representation where a lawyer receives confidential information from a prospective client that could be "significantly harmful" to the prospective client if used in the litigation at issue. Id. 1.18(c); see also id., cmt. 6 ("[T]he lawyer is not prohibited from representing a client with interests adverse to those of the prospective client in the same or a substantially related matter *unless the lawyer has received from the prospective client information that could be significantly harmful if used in that matter*.") (emphasis added). Courts have held that information is not "significantly harmful" if it is public information, if it merely regards the "history of the dispute," or if it is "likely to be revealed at [the moving party's] deposition or in other discovery." Benevida Foods, LLC v. Advance

---

[1] Paragraph (d) of the Rule 1.18 permits a disqualified lawyer's firm to represent a party adverse to the disqualified lawyer's prospective client if certain, specific factors are met.

7

Magazine Publishers Inc., No. 15 CV 2729, 2016 WL 3453342, at *11 (S.D.N.Y. June 15, 2016) (citing Zalewski v. Shelroc Homes, LLC, 856 F. Supp. 2d 426, 435 (N.D.N.Y. 2012); Bell v. Cumberland Cty., No. 09 CV 6485, 2012 WL 1900570, at *8 (D.N.J. May 23, 2012)).

Mr. Troy disputes some of Ms. Leung's testimony concerning their discussions (see Declaration of John Troy, Esq., dated Apr. 24, 2017, Dkt. No. 47-1), but it is undisputed that the two never discussed the instant wage and hour matter, other than in the most general terms. Even accepting all of Ms. Leung's testimony as true, she revealed no confidential information to Mr. Troy that could be "significantly harmful" to her or Superworld in this case. See Zalewski, 856 F. Supp. 2d at 435-37 (interpreting "significantly harmful" to include a party's "undisclosed settlement strategy," its "views and impressions of [the] litigation," its "thoughts on the . . . strengths and weaknesses of the parties' respective positions," and its "opinions and impression of even public documents and facts.") Ms. Leung does not claim to have told Mr. Troy anything about how tour guides were paid or her company's relationship to them. The fact that Superworld had an agreement with VMC was revealed when defendants filed the third-party complaint on November 16, 2016, and the details of that agreement would have been disclosed in discovery regardless.

Movants have not met their burden of demonstrating that Mr. Troy received information from Ms. Leung that could be significantly harmful to her if used in this action. Accordingly, the motion to disqualify plaintiffs' counsel is denied.

SO ORDERED.

Dated: Brooklyn, New York
       October 11, 2017

                                   /s/
                            ROBERT M. LEVY
                            United States Magistrate Judge